In this cause, on motion for rehearing, the opinion of the court delivered heretofore and on the twenty-first day of February, 1928, is withdrawn and the following is substituted as the opinion of the court:
About February 20, 1925, Louis Bernheim, a resident of Silver Bow County, Montana, died, leaving estate in that county. He left, surviving him, a widow, Augusta G. Bernheim (called Augusta Bernheim in the title of this case and proceedings therein), and collateral relatives. He left a holographic will, executed February 7, 1925. The nominative and dispositive parts of it are as follows: "To my wife, Augusta G. Bernheim, I give and bequeath, out of my estate, all which the law allows a wife to inherit out of the estate of her husband. The rest of my estate is to go to my relatives. My nephew, David Bernheim, of Newark, New Jersey, an attorney at law, at the Union Building, 9 Clinton Street, Newark, New Jersey, shall be the executor of my will and shall administer my estate without bonds. The widow of my brother Joseph and her daughter, Mrs. Martha Hahn, shall receive out of my estate only twenty-five dollars each and no more. The other daughter of Mrs. Mary Bernheim, the widow of my brother Josef, Mrs. Judith Green, shall receive twenty-five dollars and no more. The residue of the estate shall be distributed as the executor of my will, my nephew, David Bernheim, sees fit. I recommend to his special care my niece, Fanny Blumenfeld, and my grand-niece, Leona Matilda Blumenfeld."
A petition for the probate of the will was filed in the district court and, March 14, 1925, the will was admitted to *Page 202 
probate and there was made an order appointing David Bernheim as the executor thereof.
Thereafter, Martha Hahn and Judith Green (mentioned in the will), as heirs, filed in the district court a petition to determine heirship of Louis Bernheim, deceased, and, as plaintiffs, a complaint to have revoked the probate of the will and have declared void the instrument admitted to probate as a will and to have established heirship and have declared the rights of all persons in and to decedent's estate. Later, an amended complaint was filed. Leo Bernheim, Anna Bernheim, Val Sheres, David Bernheim and Augusta Bernheim were named therein as defendants. The amended complaint consists of two courts.
In the first count it is alleged substantially: That decedent, a resident of Silver Bow County, Montana, died intestate and left estate in that county; that plaintiffs had filed, in the matter of the estate, a petition to determine heirship and now file therein an amended complaint; that, March 14, 1925, there was admitted to probate a purported will of decedent; that, according to the terms thereof, after certain bequests, the remainder of the estate is not disposed of and descended, by the law of succession, to the heirs and that the terms of the purported will are so contradictory the bequests cannot be given effect; that the heirs are those named and their relationships to decedent are as stated; that the purported will is ineffective and the estate passed, by operation of law, to the heirs and the share vesting in each is as stated. In the second count somewhat different allegations are made but substantially to the same effect, with the same result in view.
A copy of the purported will is attached to the amended complaint and made a part thereof.
The prayer asks that the order admitting the will to probate be annulled and that the will be declared void or, if it be not held void in toto, that it be held void except as to the provisions appointing an executor and revoking all former wills; that the persons whose names are set forth be declared *Page 203 
to be the heirs of decedent and entitled to share in the estate in the proportions named.
The order of court provided for in section 10324, Revised Codes, 1921, was made and it appears that notice as in that section required was given and served.
In response to such notice, the following mentioned parties, named in the amended complaint as defendants, appeared and answered and, by answer, set forth their respective claims in and to the estate of decedent: Augusta Bernheim, the widow, in separate answer; David Bernheim, as an individual, in separate answer; Leo Bernheim, Anna Bernheim and Val Sheres, in joint answer. David Bernheim, as executor, was not named in the amended complaint as a defendant but he filed an answer and was permitted to make himself a defendant and to answer. In his answer, he alleges that decedent left a will, the one in question, and that it is a valid will; alleges that the will was duly probated and that he was duly appointed executor of the will and qualified as such and is acting as such; he denies invalidity of all or any part of the will and seeks to uphold the will in its entirety and says it is necessary that his duties in the distribution of the estate be determined by judgment of court.
A reply to the joint answer of Leo Bernheim, Anna Bernheim and Val Sheres was made.
These pleadings being filed, Augusta Bernheim moved for judgment on the pleadings; David Bernheim, as executor, and David Bernheim, as an individual, did likewise, jointly; and plaintiffs did the same.
Thereafter, the court made an order in the premises. It holds that Louis Bernheim died testate, owning real and personal property in Silver Bow County, Montana. It names his heirs. The list includes all parties to this proceeding and sets forth their respective relationships to decedent, in his lifetime. The order holds that the dispositive provisions of the will, aside from the specific bequests made, are void; that the dispositive parts of the will are so interdependent that injustice *Page 204 
would be done and the intention of the testator would be disregarded, if the clauses making bequests were retained and given effect and the other provisions, rejected; that, therefore, the will, in so far as it attempts to dispose of property, is invalid and that, upon final distribution, the widow should have one-half of the estate. It names each of the other relatives entitled to participate and sets forth the share each should receive.
Whereupon, the court rendered judgment, adjudging and decreeing the will to be invalid as to all of the dispositive provisions thereof and that the entire estate be distributed according to the law of succession. It recites that it is further adjudged and decreed that, after payment of debts of decedent and expenses of administration, the estate be distributed to the heirs, according to their respective interests, as set forth in the judgment.
From the judgment, appeals were taken by Augusta Bernheim, the widow; David Bernheim, as an individual; David Bernheim, as executor.
In this court, joint motion was made by all of the respondents (the plaintiffs and defendants Leo Bernheim, Anna Bernheim and Val Sheres) to dismiss each of the appeals.
The motion to dismiss the appeal of Augusta Bernheim was made on the ground that appellant is not a party aggrieved by the judgment.
The motion to dismiss the appeal of David Bernheim, as an individual, was made on the ground that appellant did not file an undertaking on appeal.
The motion to dismiss the appeal of David Bernheim, as executor, was made on two grounds: (1) that the record does not show that there was made any objection by the appellant to the entry of the judgment; (2) that appellant is not a party aggrieved by the judgment.
The motions to dismiss were argued orally, upon the argument of the cause in this court. In addition, extensive briefs, *Page 205 
for and against the motions, were filed, aside from the briefs on the merits of the cause.
We consider first the motions to dismiss appeals and of them[1] we take up first the motion to dismiss the appeal of Augusta Bernheim, made on the ground that she is not an aggrieved party. The right of appeal is purely statutory. (In re Searls,46 Mont. 322, 127 P. 902; Miles City v. Drum, 60 Mont. 451,199 P. 719.) Only an aggrieved party may appeal. (Sec. 9730, Rev. Codes, 1921.) Under the statute respecting the right of appeal (sec. 9730, supra), the proper general rule is that any party to an action or proceeding having an interest, recognized by law, in the subject-matter, which is injuriously affected by the judgment, is a party aggrieved within its meaning. (Hornbeck v. Richards, 80 Mont. 27, 257 P. 1025.) Is Augusta Bernheim aggrieved by the judgment?
Careful inspection of the pleadings and the judgment shows conclusively that Augusta Bernheim was awarded by the judgment all she sought by her answer. She was required by order of court and by statute (sec. 10324, supra), to appear and assert her interest in the estate of her deceased husband. She complied; she appeared and, by her answer, she asserted her interest to be one-half. Her answer alleged that decedent left a will and that the will was valid and asserted that her interest under the will was one-half of the estate and further asserted that, if the will should be held invalid and if the estate should be distributed according to the Montana law of succession, still her interest would be one-half. She claimed no more than one-half, in any event. The judgment awarded her one-half. We shall not go into a detailed analysis of the pleadings. However, we have carefully analyzed the pleadings, with the result that we hold as above announced. Augusta Bernheim having been awarded all she sought, she is not an aggrieved party and has no right of appeal. (3 C.J. 635 and cases cited.) *Page 206 
For the reasons we have given, the motion to dismiss Augusta Bernheim's appeal is granted and her appeal is dismissed and with it go all of her counsel's specifications of error, including that made as to failure of the trial court to decree dower to her, none of which may be considered.
The appeal of David Bernheim, as an individual, must be[2] dismissed, because he did not file an undertaking on appeal or deposit money in lieu thereof and there was no waiver (sec. 9733, Rev. Codes, 1921), and it is so ordered.
We take up now the motion to dismiss the appeal of David[3] Bernheim, as executor. Is the executor an aggrieved party? Counsel for plaintiffs contend not.
We hold the executor was a necessary and proper party defendant to this action. The amended complaint herein, it is true, seeks to determine heirship but it seeks also revocation of the probate of the will and to have the will declared invalid. That being the case, citation to the executor to appear should have been issued and served. (Sec. 10043, Rev. Codes, 1921.) It was not done but he came in voluntarily and answered and his answer was permitted to stand, as was proper. Being lawfully and properly a defendant, the executor had a right to defend in the trial court.
Upon the authority of In re Carroll's Estate, 59 Mont. 403,196 P. 996, we hold the executor, having been defeated, in part, below, was aggrieved thereby and is an aggrieved party. True, the executor in the Carroll Case was removed, by the judgment of the trial court, and thereby lost the emoluments of his office and not so here, the executor here being allowed to retain his position; but removal of the executor was not the ground on which this court held it to be the right of the Carroll executor to appeal. It was put upon his duty to uphold the integrity and validity of the will; duty to defend his trust. The same duty devolved upon the executor in this case. We see no cause to differentiate. The same doctrine is declared in In reCollins' Estate, 174 Cal. 663, 164 P. 1110; *Page 207 In re Heydenfeldt's Estate, 117 Cal. 551, 49 P. 713; In reMcKinney's Estate, 112 Cal. 447, 44 P. 743; In re Whetton'sEstate, 98 Cal. 203, 32 P. 970. The case of In re Dewar'sEstate, 10 Mont. 422, 25 P. 1025, and other cases cited by counsel for plaintiffs rest upon a different principle and are not applicable.
Counsel for plaintiffs, as another ground for their motion to dismiss the executor's appeal, urge that he has no right of appeal because, in the trial court, he did not object, they contend, to the giving of the judgment or lay a foundation for appeal. A careful analysis of the pleadings and an examination of the authorities cited convince us that the contention is without merit. We hold that the executor's answer makes a number of material allegations which constitute objection to the judgment and furnish a foundation for appeal.
We hold the executor entitled to appeal and the motion to dismiss his appeal is denied. Therefore, we take up, for consideration, the case as presented by this appeal.
Counsel for the executor assign but one specification of error, viz.: That "the court erred by its judgment of April 22, 1927, in holding the will of Louis Bernheim, deceased, to be of no effect, as a testamentary disposition of his estate." The attack upon the judgment must be divided into two attacks upon different parts of the judgment: (1) That part which holds void the attempted disposition of the residue of the estate, after the making of certain legacies; (2) that part which holds the legacies are so interdependent with the attempted disposition of the residue that they must fall with it and, therefore, all dispositive provisions of the will are void. We take up first the attack upon the residuary provision. Counsel for the executor contend the provision for disposition of the residue is valid; counsel for plaintiffs contend, void.
The dispositive provisions of the will are divided into five parts. The first gives to the widow all the law allows a wife to inherit. Then the will says the rest of the estate is to go *Page 208 
to relatives. Then it gives to a sister-in-law $25 and to each of her two daughters $25. Then it says the residue shall be distributed as the executor sees fit. Then it recommends to his special care a niece and a grand-niece. An essential question arises as to what, as indicated by the wording of the will, the testator meant when, after provision for the widow, he declared the rest of the estate was to go to relatives.
The word "relatives" has two meanings: (1) an enlarged meaning[4] which includes all persons who are related in any way, by consanguinity or affinity, lineal and collateral relatives; (2) a restricted meaning which is confined to such relatives as are heirs, under the law of succession. It is the universal holding that, when used in a will, the word is presumed to mean relatives in the restricted sense, unless a contrary intention is apparent from the context of the will. (28 R.C.L. 256; 40 Cyc. 1458; 2 Underhill on Law of Wills, 784; Schouler on Wills, 3d ed., 599; Page on Wills, 616; Drew v. Wakefield, 54 Me. 291; Thompson
v. Thornton, 197 Mass. 273, 83 N.E. 880.) Indeed, in Montana, that principle of law is made statutory, as expressed in section 7033, Revised Codes, 1921. However, an intention to use the word "relatives" in a larger sense may be manifested by the wording of the will, as is shown by section 7033, supra, and all of the authorities just above cited, as well as many others.
It is the general holding, practically without exception, that when the word "relatives," in a will, is intended evidently to be used in the larger sense it renders invalid and void for uncertainty the provision of the will to which it relates; that is, a general provision that property is to go to relatives or that a residue is to go to relatives, when the wording of the will shows the larger meaning of the word is intended, is void. (2 Jarman on Wills, 5th ed., 660; Hawkins on Wills, 2d ed., 136, 137; Schouler on Wills, 3d ed., 599; Schouler on Wills and Administration, 255; McNeilledge v. Galbraith, 8 Serg. *Page 209 R. ___ Pa. ___ 43, 11 Am. Dec. 572; Henderson v. Henderson,77 N.J. Eq. 317, 77 A. 348; Drew v. Wakefield, supra.)
In what sense does it appear the testator, in this case, meant to use the word "relatives"? Is there anything in the wording of the will to show plainly that he intended it to be taken in the larger sense? We think there is. As to that point, counsel for the executor cite the case of In re Spriggs' Estate, 70 Mont. 272,225 P. 617, but we do not think it helpful as to that aspect of this case.
The testator, when it came to disposing of his estate, first provided that his wife should have all which the law allows a wife to inherit. Then the will says "the rest of my estate is to go to my relatives." That language is plain. It shows that everybody who is to share in the rest of his estate is accounted a relative; none other is to have any share. Now, whom did he consider to be included in the word "relatives"? Let us see. After saying all who are to participate must be relatives, the will says a sister-in-law, the wife of testator's deceased brother, Joseph, is to have $25; then her two daughters (testator's nieces) are to have $25, each. It is inevitable that the testator considered them relatives, because none but relatives are to share in his estate. Thus he named, as beneficiaries, one relative by affinity and two relatives of consanguinity. It is evident he considered all relatives. That shows, we believe, by "relatives" he meant all relatives by blood or marriage — relatives in the larger sense.
That belief is confirmed by further provisions of the will. Testator named his nephew as executor of the will. Then follow the bequests to the sister-in-law and nieces. Then the will says the residue of the estate shall be distributed as the executor "sees fit." However, within his discretion, the executor must distribute to relatives only, of course, because none but relatives may share. In giving to the executor the plenary power to distribute among relatives as he may see fit it appears testator feared the executor might bestow largess liberally *Page 210 
upon the sister-in-law and her daughters, testator considering them relatives, and he took the precaution to forestall such a happening by providing that each of those relatives should receive $25 "and no more." As to the other relatives, the executor could do as he might please, with no restriction upon him.
Furthermore, after leaving to the judgment of the executor the disposition of the residue, testator recommended to the executor's special care another niece and his grand-niece. The latter is not an heir at law. Therefore, evidently he had in mind, as a relative, another person who was a relative only in the larger sense, the grand-niece. He wanted those two relatives (niece and grand-niece) to be dealt with generously, when the executor should distribute among relatives. We are convinced the will shows that testator, as do many laymen, believed that the word "relatives" meant all of consanguinity or affinity, lineal and collateral, and that he used it in that sense and intended his executor to have a free hand in distributing to such (except with the restriction of $25 each, to the sister-in-law and her two daughters) and that he desired two mentioned by him to be remembered liberally; at least we hold the language so justifies. A case quite analogous on facts, in which it is held as we hold, is Estate of Peters, 11 Phil. Rep. (Pa.) 85; another is Hoffand Tucker's Appeal, 28 Pa. 51. In deciding, we must be governed by the context of the will. (28 R.C.L. 256; 40 Cyc. 1459; 2 Underhill on Law of Wills, 785; Page on Wills, 616; Pack v.Shanklin, 43 W. Va. 304, 27 S.E. 389; Pontius v. Conrad,317 Ill. 241, 148 N.E. 17; Oglesbee v. Miller, 111 Ohio 426,145 N.E. 846; Boal v. Metropolitan Museum of Art, 298 Fed. 894.) As regards section 7033, supra, we hold the word "relatives" in the will is explained and qualified by the bequests thereafter made and the reference to the grand-niece.
Counsel for the executor seek to avoid our conclusion by[5] saying sentences of the will should be transposed; saying all *Page 211 
bequests should be considered as coming together and coming first and then, after the bequests, the words "the rest of my estate is to go to my relatives," should follow, with the residuary provision following thereafter. They would have us pick up the bequests to the sister-in-law and her daughters and put them before the words about the rest of the estate. To do that those bequests would have to be carried quite a way and put ahead of not only the words about the rest of the estate but of the sentence nominating the nephew as executor; the bequests would have to be jumped over two sentences.
It is sometimes permitted to transpose sentences of a will; all authorities so hold. However, it may be done only to give effect to testator's intention, as it appears from the whole will and "courts are reluctant to do it." (Page on Wills, 558.) It may be done "when a clause in a will is insensible or absurd and can be rendered sensible and consistent; * * * but words in a will that are good sense are not to be transposed; * * * if a doubt arises in regard to any such change advancing the real intent of the testator, it cannot be made." (1 Redfield on Law of Wills, 4th ed., 468 et seq.) "Transposition of the words of a will is to be made only when necessary to give effect to a meaning and purpose of the testator which is certain and in no case when the words of a will are plain and unequivocal is a transposition to be made that will create a meaning different from that which they naturally had as written." (28 R.C.L. 225.) Those text pronouncements are applied and upheld in Augustus v. Seabolt, 3 Met. (Ky.) 139; Latham v. Latham, 30 Iowa, 294; Successionof Margaret McAuley, 29 La. Ann. 33; Behrens v. Baumann,66 W. Va. 56, 27 L.R.A. (n.s.) 1092, 66 S.E. 5; Graham v.Graham, 23 W. Va. 40, 48 Am. Rep. 364; and many other cases too numerous to cite. Applying those declarations of the law to the case at bar, we see no justification for resorting to transposition. "The language of a will which is clear should not be distorted or meddled with." (Schouler on Wills, 3d *Page 212 
ed., 529.) We are of opinion the language of this will is clear; it is not involved; it makes good sense.
Whether or not transposition be permissible (and we hold not),[6] there remains the reference to the grand-niece, indicating she was regarded as a relative. Counsel for the executor contend it is merely precatory. Many decisions may be found on what is or is not precatory, depending chiefly on the wording of each will. It is held that, when property is given by will to a party, in absolute terms, with a request, recommendation or suggestion that he share it with another or others and the terms are not mandatory but leave it to the legatee's discretion as to dividing, the language is precatory. (2 Underhill on Law of Wills, 1157.) Is that the case here? Is the residue given absolutely to the executor? Manifestly not. It is not given at all to him. The will says the residue shall be distributed as the executor sees fit. We see nothing in that language giving the residue to the executor; it is not for him to keep; he is commanded to distribute it. In California, this distinction is drawn: It is held that an expression of desire addressed to alegatee that he share his legacy with others or remember others with some portion thereof is precatory, merely advisory, a matter of discretion, and may be obeyed or not, as the legatee may choose; but that an expression of desire as to remembering others addressed to an executor is imperative and must be obeyed. (Inre Sowash's Estate, 62 Cal.App. 512, 217 P. 123.) Here the expression of desire is addressed to the executor, not one of the legatees. We hold the language with reference to the grand-niece is not merely precatory. However, whether precatory or not is really immaterial, for, to our minds, the language shows the grand-niece was regarded as a relative and that testator had in mind the larger meaning of the word "relatives."
Taking the language of the will as it is, we hold the residue of the estate is intended to be distributed by the executor to relatives in the larger sense, those by affinity as well as of *Page 213 
consanguinity, and therefore, as held by practically all authority, that the residuary clause of the will is void and that as to the residue of the estate there is no disposition thereof. Having arrived at that conclusion, what of the legacies? Are they valid or invalid and, if valid, are they to be allowed to stand or shall they fall with the residuary clause?
As to when one part of a will may be held void and another[7] part effective and whether or not the invalidity of one dispositive provision renders ineffective another dispositive provision, valid within itself, the general rule is declared thus, in 28 R.C.L., pp. 358, 359: "The general rule is that invalid provisions in a will may be rejected and the valid provisions given effect, if the general scheme of disposition entertained by the testator is not thereby changed. * * * On the other hand, bequests in a will, valid in themselves, must be rejected with the invalid ones, if the retention of them would defeat the testator's wishes, as evidenced by the general scheme adopted, or if manifest injustice would result to the beneficiaries." In 40 Cyc., pp. 1418, 1419, the rule is stated thus: "Where a will contains different provisions, some of which are valid by law and others invalid, those which are valid will be upheld, if they can be separated from those which are invalid without violating the testator's general intention, and as to the parts which are invalid the testator may be held to have died intestate. Where, however, the parts which are valid and those which are invalid are so dependent upon each other that they cannot be separated without defeating the testator's general intention, the whole will or provision will be held invalid." Upon that subject, Page on Wills, page 733, says: "If, consistent with the general scheme of the will, the valid gifts can be separated from the invalid, this will be done and the valid gifts will be sustained, while the gifts in violation of the rule will be defeated. If, on the other hand, the valid and invalid gifts are so closely connected by will that it is evidently testator's intention that all *Page 214 
shall stand or fall together, the invalidity of one gift will defeat the others."
The case of Reid v. Voorhees, 216 Ill. 236, 74 N.E. 804, 3 Ann. Cas. 946, is an illuminating case upon that point, in which the subject is discussed in an able opinion, and, as last cited, in a copious note. The opinion says: "Where provisions of a will are in fact independent and not for the carrying out of a common or general purpose, it is undoubtedly true that such as are contrary to law may be rejected without in any manner affecting valid provisions. The statement, however, that a valid provision will be sustained if no violence is done to the part sustained by the rejection of the invalid provisions is too narrow a statement of the rule and is in disregard of the cardinal principle that the testator's wishes, as evidenced by the general scheme adopted, are to be taken into consideration, so that justice may be done if it can be. * * * The correct solution can only be arrived at by taking into consideration the general scheme and intention of the testator and the effect that defeating a part of the provisions may have upon the general scheme of the testator or on the beneficiaries or objects of his bounty."
The case note in 3 Ann. Cas. 950 contains this: "It is a well-established rule of testamentary construction that, where certain provisions of an attempted devise or bequest are obnoxious to some rule of law and cannot be given effect and these portions can be expunged without essentially changing the general testamentary scheme, the courts will uphold the valid portions of the will; but if the valid and invalid provisions of an attempted testamentary disposition are so interdependent that the former cannot be disregarded and the latter carried out without doing violence to the manifest scheme and intent of the testator the disposition will fail entirely."
In the note a great number of cases are cited to sustain that pronouncement. A number of them are quite analogous to the case at bar, particularly that of Benedict v. Webb, 98 N.Y. 460, *Page 215 
in which all bequests failed because one was invalid, the court holding that to allow the valid to be effectuated, after rejection of the invalid, would produce manifest injustice. Many other authorities to like effect are available.
Another case in which the subject is quite edifyingly discussed in the opinion is that of Fennell v. Fennell,80 Kan. 730, 18 Ann. Cas. 471, 106 P. 1038. There the same doctrine is declared and, as last cited, in an extensive note many other cases are cited to uphold the doctrine and its results.
In the case at bar, the residuary provision of the will being[8] void, according to practically all authority and as we have held, and decedent having not disposed of the residue of his estate, the residue will have to be distributed by the executor according to the law of succession to all of the heirs at law and, if the legacies be allowed to stand, those heirs who are legatees will get their respective shares of the residue, by inheritance, in addition to their legacies. (Secs. 6974, 7072, 7073 and 10327, Rev. Codes, 1921; 40 Cyc. 1943 and cases cited.)
Now, if that should be done would it defeat the general testamentary scheme and intention of the testator? Are the legacies and the residuary clause of the will so interdependent that the former must fail with the latter or else the general scheme and intent of the will be disrupted? We feel both questions must be answered in the affirmative, except as to the bequest to the sister-in-law and the provision for the widow.
It is the plain declaration of the will that the testator wanted the sister-in-law's two daughters, the plaintiffs, to have $25, each, and no more; and that he wanted the widow to have whatever the law allows a wife to inherit; that means he wanted her to have no more nor less than that. Then, after those provisions and a bequest of $25 to the sister-in-law, he wanted the rest of the estate to go to other relatives, some of whom are heirs at law. *Page 216 
Now, if the legatees who are heirs were to be allowed to get[9] their legacies and, in addition, as heirs, their respective shares of the residue, it is plain that each of the plaintiffs would get, under the will, more than testator desired her to get.
Viewed alone, the legacies to the plaintiffs appear to be valid but we hold that to allow them to stand would defeat the general testamentary scheme and intent of testator and we hold that these legacies and the residuary clause are so interdependent that the former must fail with the latter. As to the bequest to the sister-in-law, Mary Bernheim, there is no objection to it, for, she not being an heir, she cannot share in the residue, according to our holding, and there is no reason why her bequest should fail; nor is there any objection to the provision for the widow; this the widow has asserted to be one-half and that she was given.
There does not appear to be any prior decision of this court precisely in point but we find nothing in its decisions in conflict with the conclusion above announced. In re Schmidt'sEstate, 15 Mont. 117, 38 P. 547, is a case wherein it is held that a void provision of a will, easily separable from the rest of the will, did not invalidate the rest of the will but it is entirely different from the case at bar. In that case, it is plain that holding void one provision of the will did not defeat a general testamentary scheme, as we hold is the case here. Inre Fratt's Estate, 60 Mont. 526, 199 P. 711, is cited in one of the briefs before us but that case is not at all analogous on this point. No part of the will in that case was void; nothing was void; there was no question of the effect of a void provision upon other provisions. In that case there was simply a lapse of a legacy, because of the demise of the legatee prior to the death of the testatrix and this court very properly held that the lapsed legacy reverted to the estate of the testatrix and went to all the heirs at law alike. There was nothing to defeat any general testamentary scheme. There the testatrix *Page 217 
was living when a legatee died and the testatrix could have altered her will had she so desired.
In the case at bar, we hold that the trial court erred only in holding void the bequest to Mary Bernheim and the provision for the widow. We hold that all other dispositive provisions of the will of the testator are null and ineffective and that the residue of the estate, after allowance of Mary Bernheim's bequest and the provision for the widow, must be distributed, after payment of all just debts and the expense of administration, to the heirs at law of the testator, exclusive of the widow, under and according to the law of succession of the State of Montana.
The judgment of the district court is ordered modified in accordance with these views and, as modified, it is affirmed. The cause is remanded, with directions to the district court to modify its judgment in accordance with this opinion and, as so modified, to make the same its judgment in the cause.
It is our opinion that all costs of appeal in the case should be defrayed by the estate and it is so ordered.
Modified and affirmed.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur. *Page 218